# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA L. HARVEY, | ) 1:08cv01828 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S<br>) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner<br>of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Yolanda L. Harvey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications on January 19, 2006, alleging disability since May 1, 2003, due to torn ligaments in her knee and ankle. AR 97-98, 124-130. Her applications were denied

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

initially and on reconsideration, and Plaintiff requested a hearing before an administrative law judge. AR 55-58, 60-64, 66-70, 72. On May 20, 2008, Administrative Law Judge ("ALJ") Christopher Larsen held hearing. AR 14-36. He denied benefits on July 24, 2008. AR 5-13. On September 26, 2008, the Appeals Council denied review. AR 1-4.

Hearing Testimony

On May 20, 2008, ALJ Larson held a hearing in Bakersfield, California. Plaintiff appeared with her attorney, Geoffrey Hayden. Vocational expert ("VE") Linda Ferra also appeared and testified. AR 14.

Plaintiff testified that she was 35 years old at the time of the hearing. She completed the tenth grade and can read and write. Plaintiff is 5 feet, 4 inches tall and weighs 260 pounds. She does not have a driver's license and does not drive a car. AR 21. Plaintiff tried to drive, but could not because her knee hurt too much. AR 32. She lives with her mother and her three children and receives AFDC. AR 27.

Plaintiff last worked in 2002 operating a bench press. AR 21. She worked in that position for 11 months, but left when she injured her knee after a trip and fall. AR 22. Prior to that position, she also worked in a security position and as an assembler. AR 23. Plaintiff testified that she could not work now because of her right knee, which causes constant pain. Plaintiff had surgery on the knee but did not believe it was successful. Plaintiff thought she could walk for 20 minutes before needing to stop and sit. AR 23. She could lift and carry less than 10 pounds without pain. Plaintiff thought that she could sit for 20-30 minutes before needing to stand. Her most comfortable position was laying down. AR 24. Plaintiff uses a cane and braces for her ankle and knee. AR 27.

Plaintiff also testified that she gets tingling sensations in her hands and wrists. She has been diagnosed with carpal tunnel syndrome ("CTS") and wears braces on her wrists. AR 24. Plaintiff has problems with headaches, as well, and estimated that she got them three times a week. AR 25.

Plaintiff also fractured her right ankle when her knee gave out as she was stepping down. The ankle has not healed completely and causes a constant, throbbing pain. AR 25. Plaintiff

rated her daily pain as an eight to nine, on a scale of one to ten. AR 26. She takes 800 milligrams of ibuprofen and Aleve. She has had physical therapy and believed that it helped. AR 26.

During the day, Plaintiff testified that she lays down and elevates her leg for a couple of hours. She could not kneel, stoop or squat to the ground. AR 28. Plaintiff does not do housework, and does not cook or grocery shop. AR 29. She also has trouble putting her shoes on and cannot stay in the shower very long. Her hands and feet get numb about three times a week. AR 29.

Plaintiff does not have a social life and does not exercise. She did not feel that she was getting any better. AR 29. Two doctors have told her that she needs a knee replacement, but that she is too young. AR 30.

For the first hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for a total of six hours and sit for a total of six hours. This person could not perform any forceful pushing or pulling with her right leg, and could not climb ladders, ropes or scaffolds. This person could occasionally kneel, crouch, crawl and climb ramps or stairs. She could frequently balance and stoop, but had to avoid concentrated exposure to hazards. The VE testified that this person could perform Plaintiff's past job as a security guard. AR 33.

For the second hypothetical, the ALJ asked the VE to assume that this person can lift and carry 10 pounds occasionally, less than 10 pounds frequently. This person could stand and walk for a total of two hours and sit for a total of six hours. She could never climb ladders, ropes or scaffolds and could never kneel or crouch. This person must avoid concentrated exposure to hazards. The VE testified that this person could not perform Plaintiff's past jobs and could not perform any other jobs in the national economy. AR 33-34.

If a limitation to occasional handling, fingering or feeling with bilateral hands was added, this person could not perform any work. AR 34.

Similarly, if this person could stand and walk for less than two hours and sit for less than six, this person could not perform any work. AR 34.

The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles. AR 34.

Medical Record

On September 23, 2003, Plaintiff underwent arthroscopic surgery on her right knee to repair a ligament tear. A partial medial meniscectomy was also performed. AR 156.

On December 12, 2003, Plaintiff saw Ramana G. V. Rao, M.D., for follow-up two and a half months after surgery. She was ambulating independently and complained of occasional pain. Dr. Rao noted that she was doing well and encouraged her to continue home exercises. AR 154.

On May 18, 2005, Plaintiff saw Physician's Assistant David M. Rigby for reevaluation of her right knee. Plaintiff complained of clicking and popping and reported that she has been using a brace and taking Celebrex. On examination, she had full range of motion in her knee and was neurovascularly intact. There was mild crepitus in the knee. Her recent x-rays were essentially normal. PA Rigby recommended that Plaintiff undergo additional physical therapy since she has already had arthroscopic surgery. Plaintiff's normal x-rays, her age and her morbid obesity make her a poor candidate for surgery. Dr. Rao, M.D., signed off on this report. AR 153-157.

On April 19, 2006, Plaintiff saw Manick Bhardwaj., M.D., for a consultive examination. She complained of continued pain in her right knee and ankle, as well as difficulty ambulating. Plaintiff was taking Ibuprofen, 800 milligrams, for pain. On examination, Plaintiff was 5 feet, 4 inches tall and weighed 264 pounds. She had tenderness in the anterior aspect of her right knee at about 120 degrees, though there was no swelling. There was no significant tenderness in the right ankle. Examination of all other joints was unremarkable. Plaintiff was able to flex her back to 90 degrees without any discomfort. She used a cane to ambulate, though she could walk without it. Muscle strength was 5/5 and there was no edema, cyanosis or clubbing in her extremities. Dr. Bhardwaj diagnosed a history of right knee trauma and opined that Plaintiff

4

could "ambulate for about twenty minutes to half and hour and she states and needs to sit down." AR 191-193.

X-rays of Plaintiff's right knee taken on April 25, 2006, revealed medial joint narrowing and marginal spurring. AR 194.

On June 1, 2006, State Agency physician J. T. Bonner, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Bonner opined that Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently, could stand and/or walk for about six hours and could sit for about six hours. Plaintiff could not perform forceful pushing or pulling with her right leg. She could never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs. Plaintiff could frequently balance and stoop, and could occasionally kneel, crouch, and crawl. Plaintiff had to avoid concentrated exposure to uneven terrain. AR 196-203.

On May 24, 2006, Plaintiff broke her right ankle after falling. Her ankle was put in a short-leg cast and she was instructed on ice, elevation and over-the-counter analgesics. AR 208-209. She was also given Vicodin. AR 220.

X-rays of Plaintiff's right ankle taken on June 23, 2006, showed improvement. AR 206.

On August 30, 2006, Plaintiff complained of numbness in her lower right extremity, popping in her right ankle, and trouble with her right knee giving out. She had swelling in her right ankle. Her right knee was crackling, but she had full range of motion and no instability. She was prescribed ibuprofen 800 mg. AR 238-239.

X-rays taken of Plaintiff's right knee on August 31, 2006, were normal. X-rays of her right ankle showed a non-displaced spiral fracture of the distal fibia. AR 235.

Plaintiff continued to complain of right ankle pain on October 12, 2006. She was wearing an ankle splint but her pain was increasing. X-rays taken that day showed that her ankle had improved significantly, but was not completely healed. She was instructed to continue her ibuprofen. AR 231-232.

On November 11, 2006, Plaintiff complained that she fell three days before and her knee felt unstable. Examination showed right knee crepitus and laxity. AR 230.

On December 14, 2006, State Agency physician L. Bobba, M.D., reviewed Plaintiff's records and affirmed Dr. Bonner's June 2006 finding that Plaintiff could perform light work with postural limitations. AR 240-241.

Plaintiff saw Nicholas T. Valos, M.D., on November 22, 2006, for evaluation of her right knee pain. She had been using an equalizer boot, which helped. On examination, Plaintiff's gait was unremarkable, though she walked with some slight external rotation on the right side when barefoot. Her right ankle had supple range of motion, as did her right knee and hip. There was some slight tenderness at the medial joint line, but no effusion or gross laxity. An x-ray taken that day of her right ankle revealed degenerative joint disease. Dr. Valos recommended removing the equalizer boot and allowing "progressive ambulation." He also recommended a physical therapy program for her knee and ankle. AR 257-258.

Plaintiff returned to Dr. Valos on December 20, 2006. He noted that her knee was "doing fine." Her knee and ankle were still bothersome and achy, but she had not really had treatment since her injury. Plaintiff had "relatively supple" range of motion with obvious flat foot on both sides. He instructed her to continue therapy for her ankle. Dr. Valos also wanted Plaintiff to get well-fitting shoes and possibly inserts. AR 259.

Also on December 20, 2006, Plaintiff's physical therapist noted that Plaintiff reported her knee pain as zero out of ten, and pain in her ankle as five out of ten. AR 262.

On April 20, 2007, Plaintiff saw Dr. Velos and reported that her symptoms were recurring. She also admitted that she had not been doing the exercises anymore. On examination, her ankle had supple range of motion and no point tenderness. Her symptoms were medial, rather than lateral. Plaintiff's knee ached intermittently from degenerative arthritis, and Dr. Valos instructed her to take two Aleve, which was about equivalent to the prescription dose. As for her ankle, Dr. Velos believed that Plaintiff needed to get back into therapy and then do the excises at home. Plaintiff knew that this would keep her symptoms at bay. AR 261.

On May 24, 2007, Plaintiff's physical therapist reported that Plaintiff rated her current pain as a five out of ten. She progressed with decreased pain, increased strength and improved functional tolerance. Plaintiff was instructed to continue her home program. AR 259.

ALJ's Findings

ALJ Larsen determined that Plaintiff had the severe impairments of osteoarthritis in the right knee status post arthroscopic surgery, status post oblique fracture of the right fibular, morbid obesity and degenerative joint disease of the right knee.  AR 10.  Despite these impairments, Plaintiff retained the residual functional capacity ("RFC")to lift and carry 20 pounds occasionally, 10 pounds frequently, and "to sit, or stand and walk, a total of 6 hours."  She could not forcefully push or pull with the right lower extremity and could not climb ladders, ropes or scaffolds.  Plaintiff had to avoid concentrated exposure to hazards, but could occasionally kneel, crouch, crawl and climb ramps or stairs.  Plaintiff could frequently balance and stoop.  AR 11.

Given this RFC and based on the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as a security guard.  AR 12.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

7

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (osteoarthritis in the right knee status post arthroscopic surgery, status post oblique fracture of the right fibular, morbid obesity and degenerative joint disease of the right knee) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) could perform her past relevant work. AR 10-12.

Here, Plaintiff argues that the ALJ erred in rejecting her testimony.

**DISCUSSION**

Plaintiff argues that the ALJ failed to set forth clear and convincing reasons for rejecting her pain testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan,* 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair,* 885 F.2d at 603; *see also Thomas,* 278 F.3d at 958-59.

Without much argument or analysis, Plaintiff simply contends that the ALJ's discussion of her testimony was "scant at best," and "[fell] woefully short of the proper" methods of evaluation. Opening Brief, at 8. However, a review of the decision shows that the ALJ set forth numerous reasons for rejecting Plaintiff's subjective complaints.

First, the ALJ noted the discrepancy between Plaintiff's rating of her knee pain at an eight to nine, and her use of only over the counter pain medication. AR11. Indeed, except for a Vicodin and Toradol prescription after Plaintiff broke her ankle, all other pain medication has been either ibuprofen or Aleve. AR 191-193, 208-209, 238-239, 231-232. Though she may have intermittently taken these medications at prescription level strength, it is reasonable to conclude that prescription-strength narcotics would be used if Plaintiff's knee pain was as severe as she described. The ALJ is entitled to use common sense, as well as evidence of conservative treatment, in evaluating a claimant's testimony. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment," such as a claimant's use of only over-the-counter pain medication, is sufficient to discount a claimant's testimony regarding severity of an impairment); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

9

In her reply, Plaintiff points out that "narcotic pain medication is not always the answer for pain relief." Reply Brief, at 2. While this may be true, Plaintiff's logic actually supports the Court's findings. Plaintiff has undergone physical therapy, which she admits is "somewhat effective" in lowering her pain level, but was in between sessions when she testified that her pain level was an eight or nine. Reply Brief, at 2. Rather than support Plaintiff's subjective pain testimony, this demonstrates that physical therapy, which is considered a relatively conservative treatment, is successful in lowering Plaintiff's pain. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008) (favorable response to conservative treatments such as physical therapy, and use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit and a lumbosacral corset, undermines claimant's reports regarding the disabling nature of pain).

The ALJ next described Plaintiff's knee treatment and explained how certain aspects of her treatment conflicted with her testimony. For example, three months after her right knee surgery in 2003, she was ambulating independently and reported only occasional pain. Dr. Rao indicated that she was "doing well." AR 154. The ALJ noted that Plaintiff did not return to the doctor for more than a year after her knee surgery, and that the May 2005 examination revealed full range of motion in her knee, with mild crepitus. Plaintiff was neurologically intact and her recent x-rays were essentially normal. AR 12, 153-157. Plaintiff participated in physical therapy and the most recent physical therapy report from May 2007 indicated that she rated her pain at five out of ten. AR 11, 259.

In discussing her 2006 treatment, the ALJ cited Dr. Valos' finding that Plaintiff had degenerative joint disease in her knee and recommended only physical therapy. AR 12, 258. He also noted the discrepancy between Plaintiff's testimony that she used a cane and braces to walk and Dr. Bhardwaj's April 2006 finding that she could walk without an assistive device. AR 11, 12, 191-193.

Finally, the ALJ explained that despite Plaintiff's testimony that her hands tingle constantly because of carpal tunnel syndrome in both hands, there is no evidence in the record of a carpal tunnel diagnosis or complaints of tingling. AR 12. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

10

1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Given the above discussion, Plaintiff's argument that the ALJ relied solely on the medical evidence is without merit. Plaintiff correctly notes that an ALJ cannot reject a claimant's subjective complaints based only on a lack of objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856-857 (9th Cir. 2001). Here, however, the ALJ cited the lack of objective medical evidence as one factor of many in assessing Plaintiff's credibility. Although he used the medical evidence is discussing many of the factors, he did so to demonstrate Plaintiff's conservative and often successful treatment, and the discrepancies between her statements and/or actions in treatment and her current testimony.

Insofar as Plaintiff argues that the ALJ committed reversible error by failing to discuss the factors set forth in SSR 96-7p, her argument fails. SSR 96-7p certainly plays a role in the credibility analysis by guiding the ALJ's analysis, yet there is no mandate that the ALJ go through a detailed analysis of each factor in his decision.

Rather, so long as the ALJ's findings are sufficiently specific to permit the court to conclude that the he did not arbitrarily discredit claimant's testimony, the Court will uphold the determination. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). ALJ Larsen's analysis demonstrates that he did not arbitrarily reject Plaintiff's testimony. It is the ALJ's duty, not that of the Court, to weigh the evidence and resolve conflicts therein. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The Court must uphold the ALJ's decision where, as here, the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in

1 | favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,
2 | Yolanda Harvey.

   IT IS SO ORDERED.

   Dated:   **September 30, 2009**           /s/ **Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE